Camilo Amadeo Vargas, Plaintiff and Appellant, *v.* Compañía Azucarera del Toa, Defendant and Appellee.

No. 8213. Argued March 20, 1941.—Decided May 28, 1941.

756

*Enrique Lefebre,* for appellant.    *Salvador Suau,* for appellee.

MR. CHIEF JUSTICE DEL TORO delivered the opinion of the Court.

This case involves a judgment on the pleadings rendered against the plaintiff. The certainty of the facts alleged in the complaint was admitted for the sake of the demurrer. The application of the law must be, in consequence, based on that certainty.

The suit was brought by Camilo Amadeo Vargas, of legal age, against Compañía Azucarera del Toa, a domestic corporation. The plaintiff is the acknowledged natural son of Jesús M. Amadeo Antonmarchi. The father died intestate on June 27, 1927. On May 29, 1928, the District Court of San Juan declared his sons Jesús M. Amadeo García, Julio

Amadeo Ortiz and Sadí Amadeo, and the plaintiff herein, a minor at the time, Camilo·Amadeo Vargas, to be his heirs.

The father owned, at the time of his death, two rural properties in Toa Alta, one of 278 cuerdas and the other of 40 cuerdas. On June 30, 1928, by deed registered in the Registry of Property, his estate was liquidated, the three brothers of legal age being present, and the fourth, the plaintiff, who was fifteen years old at the time, represented by his mother with *patria potestas,* Carmen Vargas. It was stated that as the debts of the estate aggregated $11,120 and there was no cash to pay them, 126.30 cuerdas, valued at $7,500 out of the large property and the totality of the smaller one assessed at $3,000, were adjudicated to the coheir Jesús M. Amadeo García so that he should pay said debts. The ·plaintiff holds that as an heir of his father, to him corresponds a cotenancy of one fourth in the 126.30 and the 40 cuerdas thus adjudicated, which cotenancies are worth at present $7,500 and $2,500 respectively.

The coheir grantee sold to the defendant for $24,290 on March 29, 1929, and it owns at present, the 126.30 and the 40 cuerdas. The authorization provided by Act No. 33 of March 9, 1911 (page 118) was not obtained for said adjudication. The approval of the partition was given by the district court without the heirs having presented evidence to credit the certainty of the debts, nor to attest whether the adjudication of the real property in payment thereof was just and reasonable. The adjudication and the sale were recorded in the registry of property.

A judgment is requested declaring the adjudications null and void at law as to one fourth, and that the aforesaid one fourth is the property of the plaintiff with its rents and crops, ordering the defendant to recognize this, and to deliver to him the said fruits and rents from the date of acquisition, with costs and attorney's fees to the plaintiff if the defendant should object.

The defendant filed demurrers against the complaint, alleging that it was ambiguous, unintelligible or uncertain; that there was a nonjoinder of parties defendant, and that the complaint did not state facts sufficient to constitute a cause of action. The first two were overruled and the last one was granted, and the court, considering that the complaint could not be amended, rendered judgment on April 18, 1940, dismissing the case with costs.

The plaintiff took this appeal from that judgment and the hearing on the same was held on March 20, 1941.

■ Does the alleged inexistence arise from the facts? Let us see.

On June 1, 1915, the Supreme Court of the United States held in the case of *Longpré* v. *Díaz*, 237 U.S. 512, that under the laws of Puerto Rico, as they prevailed in 1892, a widow and a guardian *ad litem* had no authority to deliver the property of a minor in payment of a debt of his deceased father by a private sale, nor had any judge the authority to approve a voluntary partition such as the one involved in the case, deciding furthermore, that the sale being inexistent, the minor, when he attained legal age, had the right to revendicate his property.

Very soon—on January 28, 1916—this Court had the opportunity to apply the rule in the case of *Del Rosario et al.* v. *Rucabado et al.*, 23 P.R.R. 438. We held there that the adjudications in payment of debts made directly to the creditors in the partition of an estate in which there were minors involved, were inexistent if made without obtaining the previous judicial authorization required by the law.

Soon afterwards—on June 24, 1916—in *Ex parte Sotomayor et al.*, 24 P.R.R. 172, this Court said that the decisions were applicable to a case in which there were minors, and real property from the estate was adjudicated to the widower for the payment of debts.

If the law had subsisted as it was then in force, the inexistence of the partition in this case would be manifest

and the revendication would lie. But in 1917 the Legislature added Section 71A to the Act of Special Legal Proceedings of 1905, which Section reads as follows:

"Section 71A.—That whenever the partition of an inheritance is made wherein minors or incapacitated persons are interested, if property of the estate is to be adjudicated in payment of debts to heirs or others, the matter shall be submitted to the district court of competent jurisdiction for approval, and if said court, after hearing the *fiscal,* becomes convinced of the certainty of the debt and that the adjudication in payment of same is reasonable and just, it may approve such adjudication in payment of the debt without a public sale." Act No. 44 of 1917, Vol. 2, p. 342.

About thirteen years elapsed before any question arose before this Court in relation to the application of the new legal provision. In 1931 the partitional operations of the estate of Mrs. Rosario Cancel were presented for record in the Registry of Property of San Germán. There were minors involved and properties were adjudicated for the payment of debts. Notwithstanding that said partition had been approved by the district court, the registrar of property refused to record it based on *Ex parte Sotomayor et al., supra,* and *Estate of Alvarez* v. *The Registrar of Property,* 16 P.R.R. 572. The petitioner filed an administrative appeal, and this Court in the opinion delivered by Mr. Justice Aldrey, after transcribing Section 71A added to the Act of Special Legal Proceedings of 1905, said:

"In the case at bar, where the partition was confined to the division of the conjugal property, the assignee of the surviving husband receiving the latter's share and the other one-half share being allotted to the heirs in indivision, and the other allotments being made for the payment of debts of the estate, the court, after hearing the district attorney and in agreement with him, approved the partition as being fair, reasonable, and equitable. Approval was thus given to the certainty of the debt and to the reasonableness of the allotment made for the payment thereof, thereby rendering a public sale unnecessary." *Mercader* v. *Registrar,* 42 P.R.R. 673, 675–676.

Nothing more has been said or decided to the contrary on this point. The law exists and its terms are clear. And what was said in *Mercader* v. *Registrar, supra,* is directly applicable.

Since the law became effective—that of 1917 aforecopied— it is not necessary to obtain the previous authorization of the court nor to hold the auction sale even though there are minors among the heirs, when properties of the estate are adjudicated to a coheir for the payment of hereditary debts. It is enough that the procedure set up in Section 71A of the Act of Special Legal Proceedings be followed.

And as such was done in this case, the plaintiff appellant is not right in invoking Act No. 33 of 1911, page 118. Said statute is not applicable.

The situation cleared in that way, let us see if from the complaint the inexistence of the adjudication and consequently of the sale may be inferred in the purview of the law in force.

We shall copy *verbatim* all what is said in it to that respect. It is as follows:

". . . and the approval by the District Court of San Juan, P. R., was given without the heirs having presented any evidence to show the certainty of the debts of the estate, nor to determine whether the adjudication of the property in payment of the same was just and reasonable, the adjudication and the sale being thus recorded in the Registry of Property."

The lack of the approval then, is not alleged. On the contrary, it is affirmed. The defendant is not charged with fraud in the acquisition, nor with knowledge that the approval of the court was obtained in violation of the law. All that is stated is that the court gave its approval "without the heirs having presented evidence", allegation that does not exclude the possibility that the document itself which was submitted, could contain all the necessary requisites in order

that the court might have been satisfied of the certainty of the debts and of the reasonableness and justice of the adjudication.

We are not dealing with an action for nullity within the term of four years. The inexistence of the adjudication is assumed. And the action was commenced after ten years, counted not from the adjudication made to the heir or from its approval by the court and its entry in the registry, but from the date when he sold to the defendant the properties adjudicated to him.

The attack made to the proceedings for approval based exclusively on the lack of evidence, is in such consequence not direct, but collateral and is impossible at this stage of the proceedings. It seems convenient to transcribe what the trial court says to this respect:

"But it is alleged that the heir did not present any evidence to show the certainty of the debts of the inheritance nor to determine whether the adjudication of property in payment of said debts was just and reasonable. And the question to be decided now is whether for that reason, the judgment of this court approving such partitional operations may be collaterally attacked. The rule prohibiting collateral attacks to judgments, is generally applied to all classes of judgments, decrees or orders issued by courts of competent jurisdiction in all judicial proceedings. 34 C. J. 514, Sec. 816. In *González et al.* v. *Anglada et al.,* 33 P.R.R. 980, as well in *Fernández* v. *Ayllón,* 69 L. Ed. 209, it was held that the judgment rendered in a proceeding concerning judicial authorization to sell properties of minors, according to Section 80 of the Special Legal Proceedings Act (Section 614, Code of Civil Procedure, 1933 ed.) was not subject to collateral attacks, and that if the court had jurisdiction over the person and over the matter, no other error or irregularity, but one of jurisdiction, could invalidate it. We can see no reason why the same principles should not be applied to judgments in proceedings for approval of judicial partitions according to Section 605, *supra,* and if that is so, the next question to consider is whether the failure of the heirs to present evidence as to the certainty of the debt, and of the justice and reasonableness of the adjudication, deprives the court of jurisdiction to give its approval to the partitional operations in such a manner that the judgment rendered be subject to a collateral attack.

"We can affirm that whenever the courts have faced a similar situation, that is, a judgment rendered without any evidence having been presented, they have held that it is simply erroneous, and not null. In *George* v. *Dill*, 120 N. W. 448, the Supreme Court of Nebraska said:

" 'Indeed, the courts have gone so far as to say that a judgment entered in the absence of any evidence is valid and binding until set aside by some regular proceeding. In *Clark* v. *Superior Court*, 55 Cal. 199, it is said: "If, after acquiring jurisdiction of the parties and the subject-matter, a superior court should order a judgment for one of the parties without a trial, such judgment would not be 'without or in excess of the jurisdiction' of the court, although it might be erroneous, and in such case the only remedy would be by appeal." . . . If, after acquiring jurisdiction of the parties and subject-matter of an action a superior court should order judgment in favor of one of the parties without a trial, that judgment would neither be without nor in excess of the jurisdiction of such tribunal, although it might be erroneous as any judgment might be, if rendered upon the naked pleadings of a case where the pleadings raised a material issue.' "

The court cites excerpts of what has been decided in the cases of *Ex parte Bennett*, 44 Cal. 84; *Grieshaber* v. *Knoepfel*, 198 N.Y.S. 302, and *Life & Casualty Ins. Co.* v. *Clark*, (Tenn. 1932) 54 S.W. (2d) 965; it refers to 15 Cal. Jur. Sec. 158, page 82, note 2; 34 C.J. 562, Sec. 862, Note 23, and ends saying:

"The reasons for the previously mentioned rule are clear: it has to do with a public policy principle to maintain the sanctity and security of judgments. To compel he who purchases from one to whom property has been adjudicated in a partition in which there are minors, and to go beyond the record and to investigate whether there was evidence to satisfy the court as to the requirements established by Section 605, *supra*, would place on his shoulders an unnecessary burden. All that the law requires is that the court should have jurisdiction over the matter and over the parties."

Under these circumstances and as the case involves a complaint which has been amended, the district court assumed a justified action deciding the case definitely granting the demurrer.

Our opinion should not be interpreted as implying in any way that we consider that the strict fulfillment of the new law is unimportant. A district court and a district attorney who realize the responsibility that said act imposes on them, should require clear and convincing evidence of the certainty of the debts and of the justice of the adjudication in each case. Their intervention constitutes the ultimate guaranty the law grants to persons incapable of defending themselves. And this guaranty must be a reality, nor mere procedure.

The appeal must be dismissed and the judgment appealed from affirmed.